1

2

3

4

5

6

7

8                 **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10

11  FORD MOTOR COMPANY,          )   2:14-cv-07701-RSWL (JCx)
                                 )
12                  Plaintiff,   )   <span style="color:red">**AMENDED AS TO SIGNATURE DATE**</span>
                                 )
13       v.                      )   **ORDER re: Defendant's**
                                 )   **Motion to Dismiss** [28]
14                               )
    TITAN ENTERPRISE INC.,       )
15                               )
                    Defendant.   )
16                               )
                                 )
17  _____)

18

19                    **INTRODUCTION**

20       Currently before the Court is Defendant Titan

21  Enterprise Inc.'s ("Defendant" or "Titan") Motion to

22  Dismiss [28] ("Motion") pursuant to Federal Rule of

23  Civil Procedure 12(b)(6).  Defendant's Motion [28]

24  arises out of Plaintiff Ford Motor Company's

25  ("Plaintiff" or "Ford") Action [1, 23] against Titan

26  for breach of contract.

27       The Court, having reviewed all papers submitted and

28  pertaining to this Motion [28], **NOW FINDS AND RULES AS**

1  **FOLLOWS:** The Court **DENIES** Defendant's Motion to Dismiss
2  [28].

3  **I. BACKGROUND**

4  **A.  <u>Factual Background</u>**

5      Plaintiff Ford is incorporated in Delaware with its
6  principal place of business in Michigan.  First Amend.
7  Compl. ("FAC") ¶ 1, ECF No. 23.  Defendant Titan is
8  incorporated in California with its principal place of
9  business in California.  <u>Id.</u> ¶ 2.  Plaintiff is seeking
10 $823,000 in damages.  <u>Id.</u> ¶ 31.

11     Ford's Competitive Price Allowance Program ("CPA")
12 is an incentive program that encourages high volume
13 purchases by offering "discounts or credits to
14 qualified high-volume purchasers of Ford vehicles
15 through the Ford Fleet Program." <u>Id.</u> ¶¶ 8-9.  Ford and
16 Titan executed a CPA contract on September 18, 2013,
17 for the 2014 Program Year.  <u>Id.</u> ¶ 10.  In exchange for
18 discounts on Titan's purchases, the CPA contract
19 states: "Titan Enterprise Inc. must acquire 250 units
20 during the course of the program year [i.e., the
21 calendar year]," and "[i]n the event this volume has
22 not been reached, you will be required to reimburse
23 Ford all or a portion of the CPA funds paid." <u>Id.</u> ¶ 14
24 (alteration in original).  The CPA contract also
25 contained terms requiring the purchased Ford vehicles
26 to be registered and operated "solely in the United
27 States." <u>Id.</u> ¶ 15.

28     In early 2014, Defendant Titan purchased over

2

seventy Ford Explorers from a licensed Ford dealer in
California named Rush Truck Centers of California, Inc.
("Rush").   <u>Id.</u> ¶ 18.   Titan received a total of
$322,500 in discounts from Ford as a result of its
purchase from Rush.   <u>Id.</u>   Titan also purchased over one
hundred Ford Explorers from AutoNation Ford Littleton,
a licensed Ford dealer in Colorado.   <u>Id.</u> ¶ 19.   As a
result of this purchase, Titan received $500,500 in
discounts from Ford.   <u>Id.</u>

     In May of 2014, "Ford personnel verified that
dozens of Ford Explorers purchased by Titan pursuant to
the CPA Contract were [] found at a port of entry in
mainland China."   <u>Id.</u> ¶ 20.   On June 17, 2014, Jim
Chen, president of Titan, allegedly "admitted to Ford
that he exported to China some or all of the Ford
Explorers Titan purchased pursuant to the CPA
Contract."   <u>Id.</u> ¶ 23.   Titan also failed to purchase
250 Ford vehicles within the program year, as required
by the CPA contract.   <u>Id.</u> ¶ 21.

**B.   <u>Procedural Background</u>**

     Plaintiff filed its Complaint [1] on October 3,
2014, and timely filed its First Amended Complaint [23]
on January 27, 2015.   On February 17, 2015, Defendant
timely filed the present Motion to Dismiss [28].   On
February 27, 2015, Plaintiff Ford timely filed its
Opposition [29].   Defendant did not file a Reply before
the March 10, 2015, deadline and, to date, has not
filed a Reply.   The present Motion [28] was set for

hearing on March 24, 2015, and taken under submission [30] on March 18, 2015.

## II.LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal can be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." (internal citations omitted)).

In a Rule 12(b)(6) motion to dismiss, a court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party.  Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991).  The question presented by a

1  motion to dismiss is not whether the plaintiff will
2  ultimately prevail, but whether the plaintiff has
3  alleged sufficient factual grounds to support a
4  plausible claim to relief such that plaintiff is
5  entitled to offer evidence in support of its claim.
6  Iqbal, 556 U.S. at 678; Swierkiewicz v. Sorema N.A.,
7  534 U.S. 506, 511 (2002).
8                        III. ANALYSIS
9  A.   Breach of Contract Claim
10      The four elements of a breach of contract claim
11  under California law are: "(1) the contract, (2) the
12  plaintiff's performance of the contract or excuse for
13  nonperformance, (3) the defendant's breach, and (4) the
14  resulting damage to the plaintiff." Richman v.
15  Hartley, 169 Cal. Rptr. 3d 475, 478 (Ct. App. 2014)
16  (citing Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,
17  272 Cal. Rptr. 387, 395 (Ct. App. 1990)).
18      1.   The Contract
19      Here, Defendant does not dispute the existence of
20  the CPA Contract, and Plaintiff alleges sufficient
21  facts showing the existence of a contract between Ford
22  and Titan.  Opp'n 6:16-7:8; FAC ¶¶ 10-19; see Cal. Civ.
23  Code § 1550.
24      2.   Plaintiff's Performance or Excuse
25      Once a valid contract exists, both parties are
26  required to perform according to the terms of the
27  agreement.  Palmquist v. Palmquist, 27 Cal. Rptr. 744,
28  753 (Ct. App. 1963).  Here, Defendant Titan does not

dispute that Ford performed according to the terms of
the CPA Contract, and Ford has sufficiently alleged its
performance.  <u>See</u> FAC ¶¶ 13-14, 18-19.

    3.  <u>Breach</u>

Non-performance of the contract terms constitutes a
breach of contract.  <u>Zee Med. Distrib. Ass'n, Inc. v.
Zee Med., Inc.</u>, 94 Cal. Rptr. 2d 829, 836 (Ct. App.
2000).  Here, Plaintiff alleges that Defendant Titan
had a duty under the CPA Contract to purchase at least
250 Ford vehicles during the course of the program
year, and to register and operate the purchased Ford
vehicles solely in the United States.  FAC ¶¶ 14-15.
Ford alleges that Titan failed to perform both duties
by Titan's failure to purchase the required 250 Ford
vehicles and to register and operate the purchased Ford
vehicles solely in the United States.  FAC ¶¶ 20-23.
As such, Plaintiff has sufficiently alleged that Titan
breached the CPA Contract.

    4.  <u>Damages</u>

The final element of a breach of contract claim
requires that Plaintiff show damages.  <u>Emerald Bay
Cmty. Assn. v. Golden Eagle Ins. Corp.</u>, 31 Cal. Rptr.
3d 43, 52 (Ct. App. 2005).  Here, Plaintiff alleges it
was damaged in the amount of $823,000 because Titan
refused to return the $823,000 in discounts, to which
Titan is allegedly no longer entitled as a result of
Titan's breach of the CPA Contract.  FAC ¶ 24.

1    In light of the above analysis, Plaintiff has
2    sufficiently alleged a breach of contract claim upon
3    which Plaintiff may recover.

4    **B.   Defendant's Affirmative Defenses**[1]

5    "[T]he assertion of an affirmative defense may be
6    considered properly on a motion to dismiss where the
7    'allegations in the complaint suffice to establish' the
8    defense." Sams v. Yahoo! Inc., 713 F.3d 1175, 1179
9    (9th Cir. 2013) (citing Jones v. Bock, 549 U.S. 199,
10   215 (2007)); see also Asarco, LLC v. Union Pac. R.R.
11   Co., 765 F.3d 999, 1004 (9th Cir. 2014) ("Dismissal
12   under Rule 12(b)(6) on the basis of an affirmative
13   defense is proper only if the defendant shows some
14   obvious bar to securing relief on the face of the
15   complaint."). But a dismissal under Rule 12(b)(6) is
16   improper if the asserted affirmative defense raises
17   disputed issues of fact. Asarco, 765 F.3d at 1004
18   (citing Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th
19   Cir. 1984)).

20   1.   Meaning of Contract Term Requiring Purchased
21        Vehicles to be Registered and Operated Within
22        the United States

23   Defendant argues that the "term that the 'Vehicles
24   must be registered and operated solely in the United

25   _____

26   [1] An affirmative defense "plead[s] matters extraneous to the
     plaintiff's prima facie case, which deny plaintiff's right to
27   recover, even if the allegations of the complaint are true." G &
     G Closed Circuit Events, LLC v. Nguyen, No. 10-CV-00168-LHK, 2010
28   WL 3749284, at *12 (N.D. Cal. Sept. 23, 2010) (internal quotation
     marks omitted).

States,' does not preclude TITAN for [sic] exporting
the vehicles for sale." Mot. 11:6-9.  Defendant is
essentially disputing the meaning of a term of the CPA
Contract.  The Court need not consider Defendant's
argument, however, because even if Defendant's
interpretation of the CPA Contract is correct,
Plaintiff could still recover under its breach of
contract claim on the basis of Defendant's alleged
failure to purchase the requisite 250 vehicles within
the program year.

Because Defendant's affirmative defense fails to
preclude Plaintiff's recovery for its breach of
contract claim, this affirmative defense fails to
justify dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

2.   Enforceability of Contract Due to Alleged
     Restraint on Trade

Defendant argues that the "export prohibition" in
the CPA Contract is unenforceable because it is an
"undue restraint of trade" on Titan, preventing Titan
"from disposing of lawfully acquired vehicles."  Mot.
9:24-10:1.  If Defendant is correct in arguing that the
export clause is an undue restraint of trade, the Court
would sever the clause from the rest of the CPA
Contract.  See Adair, 77 Cal. Rptr. 3d at 73-74 ("It is
settled that where a contract has both void and valid
provisions, a court may sever the void provision and
enforce the remainder of the contract.").

Thus, even if the export clause is severed from the

CPA Contract, the rest of the CPA Contract would be enforceable, and Defendant Titan could still be liable for breach of contract for failing to purchase the required 250 Ford vehicles within the program year. Because Plaintiff is not precluded from recovery by this affirmative defense, this affirmative defense also fails to justify dismissal under Fed. R. Civ. P. 12(b)(6).

Because Defendant has not shown that Plaintiff's First Amended Complaint [23] fails to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6), Defendant's Motion [28] must be **DENIED.**

### VI.   CONCLUSION

For the foregoing reasons, Defendant Titan's Motion to Dismiss [28] is **HEREBY DENIED.**

**IT IS SO ORDERED.**

DATED: April 13, 2015        RONALD S.W. LEW
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge