1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**CENTRAL DISTRICT OF CALIFORNIA**

9
10
11

| | |
|---|---|
| 12  FORD MOTOR COMPANY,              ) | 2:14-cv-07701-RSWL (JCx) |

FORD MOTOR COMPANY,              )   2:14-cv-07701-RSWL (JCx)
                                 )
            Plaintiff,           )   **ORDER** Re: Plaintiff's
                                 )   Motion for Summary
      v.                         )   Judgment, or, in the
                                 )   Alternative, Partial
                                 )   Summary Judgment [57]
TITAN ENTERPRISE INC.,           )
                                 )
            Defendant.           )
                                 )
                                 )
                                 )
_____ )

    Currently before the Court is Plaintiff Ford Motor
Company's ("Plaintiff") Motion for Summary Judgment,
or, in the Alternative, Partial Summary Judgment [57]
("Motion").

    The Court, having reviewed all papers submitted and
pertaining to Plaintiff's Motion [57], **NOW FINDS AND
RULES AS FOLLOWS:** The Court **GRANTS** Plaintiff's Motion
for Summary Judgment [57] in its entirety.

## I. FINDINGS OF FACT

1. Plaintiff Ford, a Delaware corporation with its principal place of business in Michigan, manufactures new motor vehicles bearing the Ford and Lincoln brand names.  Joint Stip. Facts ("Stip. Facts") ¶¶ 1, 6, ECF No. 43 (undisputed).[1]

2. Defendant Titan Enterprise Inc. ("Defendant") is a California corporation with its principal place of business in California.  Id. at ¶ 2 (undisputed).

3. The Court has subject matter jurisdiction over this Action under 28 U.S.C. § 1332, and personal jurisdiction over Defendant.  Id. at ¶¶ 3-4 (undisputed).

4. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(a).  Id. at ¶ 5 (undisputed).

3. Plaintiff offers incentive programs to qualified individuals and businesses to, among other things, encourage high-volume purchases of Ford vehicles.  Id. at ¶ 7 (undisputed).

---

[1] The parties stipulated in their Joint Stipulated Facts that "no facts other than the facts contained [in the Stipulated Facts] may be submitted or referenced in support of or in opposition to any motion for summary judgment."  Stip. Facts 2:3-5.  Defendant concedes in its Statement of Genuine Disputes in Opposition to Plaintiff's Motion for Summary Judgment [60] ("Statement of Disputes") that "all facts submitted in [Plaintiff's] Statement of Uncontroverted Facts were stipulated to by" Plaintiff and Defendant.  Def.'s Statement Disputes 1:25-2:1.  Given this concession and the language of the parties Joint Stipulated Facts [43] that the parties "jointly stipulate to the following facts," the Court finds that each of the facts contained in the Stipulated Facts is undisputed.

4.  One such incentive program is Plaintiff's
    Competitive Price Allowance Program ("CPA"),
    through which  Plaintiff provides discounts to
    qualified high-volume purchasers of Ford vehicles
    through the Ford Fleet Program.  Id. at ¶ 8
    (undisputed).

5.  On September 18, 2013, Plaintiff and Defendant
    voluntarily executed a CPA Contract for the 2014
    Program Year.  Id. at ¶ 9 (undisputed).

6.  Pursuant to the CPA Contract, Plaintiff provided
    discounts to Defendant in exchange for Defendant's
    purchase of large numbers of Ford vehicles (the
    "Vehicles" or "Ford Vehicles").  Id. at ¶ 13
    (undisputed).  Defendant agreed that, to be
    eligible for any discounts, the Vehicles must be
    operated solely in the United States and could not
    be exported.  Id. at ¶ 14 (undisputed).

7.  The export prohibition is found in several of the
    CPA Contract's provisions, including:

    a.  The "Eligible Vehicles" provision: "Vehicles
        must be registered solely in the United States
        and must be operated in the United States."
        Id. at ¶ 14a (citing CPA Contract, p. 4)
        (undisputed);

    b.  The "In-Service Requirements" provision: "The
        minimum in-service requirement for commercial
        vehicles is 12 months or 20,000 miles
        (whichever comes first).  Vehicles must be

3

registered and operated solely in the 50 United States." Id. at ¶ 14b (citing CPA Contract, p. 4) (undisputed).

8. Plaintiff told Roger Catoire, an employee of Defendant who served as Defendant's primary negotiator of the CPA Contract, that pursuant to the "In-Service Requirements," Vehicles purchased under the CPA Contract must be operated in the United States. Id. at ¶¶ 12, 15 (undisputed). Mr. Catoire understood that this meant that the vehicles could not be exported. Id. (undisputed).

9. In 2014, Defendant purchased 185 Vehicles under the CPA Contract. Id. at ¶ 16 (undisputed).

10. Plaintiff fulfilled its obligations and duties owed to Defendant under the CPA Contract by, among other things, manufacturing, delivering, and discounting the Vehicles purchased under the CPA Contract. Id. at ¶ 17 (undisputed).

11. Defendant received discounts from Plaintiff totaling $823,000 for the Vehicles purchased under the CPA Contract. Id. at ¶ 18 (undisputed).

12. Defendant did not operate the Vehicles solely in the United States. Id. at ¶ 19 (undisputed). Less than 12 months after receiving the Vehicles, Defendant exported to China all of the Vehicles purchased under the CPA Contract. Id. at ¶ 21 (undisputed).

13. Defendant did not comply with the "12-month or

4

1      20,000 mile" "In-Service Requirements" provision

2      under the CPA Contract. <u>Id.</u> at ¶ 20 (undisputed).

3  14. Plaintiff demanded that Defendant return the

4      $823,000 in discounts it received pursuant to the

5      CPA Contract. <u>Id.</u> at ¶ 22 (undisputed).

6  15. Defendant refused to return any amount to

7      Plaintiff. <u>Id.</u> (undisputed).

8  16. Defendant agrees that the CPA Contract is legally

9      binding and valid, except for the export

10     prohibition. <u>Id.</u> at ¶ 23 (undisputed).

11                 **II. LEGAL STANDARD**

12     Federal Rule of Civil Procedure 56 states that a

13 "court shall grant summary judgment" when the movant

14 "shows that there is no genuine dispute as to any

15 material fact and the movant is entitled to judgment as

16 a matter of law." Fed. R. Civ. P. 56(a). "The party

17 moving for summary judgment has the initial burden of

18 proof to show "no genuine dispute as to any material

19 fact." Fed. R. Civ. P. 56(a); <u>In re Oracle Corp.</u>

20 <u>Securities Litigation</u>, 627 F.3d 376, 387 (9th Cir.

21 2010). "A party asserting that a fact cannot be . . .

22 genuinely disputed must support the assertion by:

23 citing to particular materials in the record, including

24 . . . stipulations." Fed. R. Civ. P. 56(c)(1)(A). "In

25 determining any motion for summary judgment . . ., the

26 Court may assume that the material facts as claimed and

27 adequately supported by the moving party are admitted

28 to exist without controversy except to the extent that

such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56-3.

Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. In re Oracle Corp., 627 F.3d at 387. If the moving party meets this burden, the burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. Id.; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000); see Fed. R. Civ. P. 56(a).

### III. BACKGROUND

**A.  Factual Background**

Plaintiff is a motor vehicle designer and manufacturer. First Am. Compl. ("FAC") ¶ 7, ECF No. 23; Stip. Facts ¶ 1. Plaintiff offers incentive programs, such as its Competitive Price Allowance ("CPA") Program, which "provides discounts or credits to qualified high-volume purchasers of Ford vehicles through the Ford Fleet Program." FAC ¶ 9; Stip. Facts ¶¶ 7-8. On September 18, 2013, Plaintiff and Defendant executed a CPA Contract.[2] FAC ¶ 10; Stip. Facts ¶ 9. Under the CPA Contract, Plaintiff agreed to provide

---

[2] The parties filed the CPA Contract under seal [56].

6

discounts to Defendant in exchange for Defendant's purchase of large numbers of Ford vehicles.  FAC ¶ 13; Stip. Facts ¶ 13.  The CPA Contract states: "Titan Enterprise Inc. must acquire 250 units during the course of the program year [i.e., the calendar year]. In the event this volume has not been reached, you will be required to reimburse Ford all or a portion of the CPA funds paid."  FAC ¶ 14 (citing CPA Contract, p. 3). The CPA Contract also contained terms[3] requiring that, in order to be eligible for any discounts, Defendant's purchased vehicles must be operated in the United States and could not be exported.  FAC ¶ 15; Stip. Facts ¶¶ 14-15.  Specifically, the "In-Service Requirements" provision states: "The minimum in-service requirement for commercial vehicles is 12 months or 20,000 miles (whichever comes first).  Vehicles must be registered and operated solely in the 50 United States."[4]  Stip. Facts ¶ 14b (citing CPA Contract, p. 4, "In-Service Requirements").

In 2014, Defendant purchased over 185 vehicles from Ford ("Ford Vehicles" or "Vehicles").  FAC ¶¶ 18-19; Stip. Facts ¶ 16.  Defendant received combined discounts totaling $823,000.  FAC ¶¶ 18-19; Stip. Facts

---

[3] For example, the "Eligible Vehicles" provision states: "Vehicles must be registered solely in the United States and must be operated in the United States."  Stip. Facts ¶ 14a (citing CPA Contract, p. 4).

[4] The CPA Contract also provides for the possibility of fleet incentive chargebacks if the "In-Service Requirements" are violated.  See CPA Contract, p. 4.

¶ 18.

In May 2014, "[Plaintiff's] personnel verified that dozens of Ford Explorers purchased by [Defendant] pursuant to the CPA Contract were [] found at a port of entry in mainland China." FAC ¶ 20; <u>see</u> Stip. Facts ¶ 21. On June 17, 2014, Jim Chen, president of Defendant Titan Enterprise Inc., allegedly "admitted to [Plaintiff] that he exported to China some or all of the Ford Explorers [Defendant] purchased pursuant to the CPA Contract." FAC ¶ 23; Stip. Facts ¶ 21. Defendant also allegedly failed to purchase at least 250 vehicles, as required by the CPA Contract. FAC ¶ 21. The parties stipulated that Defendant did not comply with the "In-Service Requirements" provision of the CPA Contract. Stip. Facts ¶ 20.

## B. __Procedural Background__

On October 3, 2014, Plaintiff filed its Complaint [1], alleging claims for breach of contract and fraud. On January 27, 2015, Plaintiff timely filed its FAC [23], which amended the Complaint to state only a claim for breach of contract.

On February 17, 2015, Defendant filed a Motion to Dismiss [20] under Federal Rule of Civil Procedure 12(b)(6), which this Court denied [32].

On May 7, 2015, Defendant filed its Answer to the First Amended Complaint [36]. In its Answer, Defendant asserted twelve affirmative defenses.

On August 27, 2015, the parties filed a Joint

Motion for Order: (1) Modifying the Scheduling Order, and (2) Granting Leave to Amend Defendant's Answer to First Amended Complaint [39].  The Court granted Defendant leave to amend its Answer to withdraw all affirmative defenses except the defense that the no-export clause in the CPA Contract is an undue restraint of trade.  Order 2:4-7, ECF No. 40.  The Court also granted the parties' joint stipulation that only facts contained in the Joint Stipulated Facts may be relied on for purposes of summary judgment.  Id. at 2:9-13.

On September 8, 2015, the parties filed their Joint Stipulated Facts [43].  Exhibit 1 to the Stipulated Facts [56] contains the parties' confidential CPA Contract, which was filed under seal.  On September 15, 2015, Defendant filed its Amended Answer to the First Amended Complaint [51], which asserted its sole affirmative defense that the no-export clause of the CPA Contract is an undue restraint of trade.

On October 16, 2016, Plaintiff filed the present Motion [57] and Statement of Uncontroverted Facts [58].  The Opposition [59], Statement of Genuine Disputes [60], and Reply [61] were timely filed.  The hearing was set for December 1, 2015 [57], and the matter was taken under submission on November 23, 2015 [62].

## IV. DISCUSSION

### A.  **Breach of Contract Claim**

Under California law, the essential elements of a claim for breach of contract are (1) the existence of a

contract, (2) Plaintiff's performance or excuse for
nonperformance, (3) Defendant's breach, and (4)
resulting damages to Plaintiff.  <u>San Mateo Union High
Sch. Dist. v. Cnty. of San Mateo</u>, 152 Cal. Rptr. 3d
530, 548 (Cal. Ct. App. 2013); <u>Greenwich Ins. Co. v.
Rodgers</u>, 729 F. Supp. 2d 1158, 1163 (C.D. Cal. 2010).

"[T]he measure of damages . . . is the amount which
will compensate the party aggrieved for all the
detriment proximately caused thereby, or which, in the
ordinary course of things, would be likely to result
therefrom."  Cal. Civ. Code § 3300.  The aim of
contract damages is to put the injured party in as good
a position as he or she would have been had performance
been rendered as promised.  <u>PAI Corp. v. Integrated
Science Solutions, Inc.</u>, No. 06-CV-05349-JCS, 2015 WL
2265671, at *5 (N.D. Cal. May 13, 2015).  "Where the
fact of damages is certain, the amount of damages need
not be calculated with absolute certainty."  <u>GHK
Assocs. v. Mayer Grp., Inc.</u>, 274 Cal. Rptr. 168, 179
(Cal. Ct. App. 1990).

Here, the parties explicitly stipulated to each of
the elements for breach of contract except damages.
First, the parties voluntarily entered into a valid CPA
Contract whereby Plaintiff agreed to provide discounts
to Defendant in exchange for Defendant's purchase of
large numbers of Ford Vehicles and adherence to the
terms of the CPA Contract.  Stip. Facts ¶¶ 9, 23.
Defendant agreed that, to be eligible for any

discounts, the Vehicles had to be operated in the United States and could not be exported. Id. at ¶ 14. Defendant stipulates that, except for the export provision, the CPA Contract is legally binding and valid. Id. at ¶ 23.

Second, Plaintiff fulfilled its obligations under the CPA Contract by, among other things, discounting the Vehicles Defendant purchased pursuant to the CPA Contract. Id. at ¶ 17.

Third, the "In-Service Requirements" provision of the CPA Contract required Defendant to operate the Vehicles solely in the 50 United States, and Defendant stipulated that it understood that the "In Service Requirements" provision of the CPA Contract meant that the vehicles could not be exported. Id. at ¶¶ 14-15. Thus, Defendant breached the CPA Contract when it did not operate the Ford Vehicles solely in the United States, as required by the minimum "In Service Requirements" provision of the CPA Contract. Id. at ¶¶ 19-20.

As to damages, Plaintiff demands the return of the $823,000 in discounts. Id. at ¶ 22. The Court finds that $823,000 will put Plaintiff in as good a position had performance been rendered as promised. See Cal. Civ. Code § 3300; PAI Corp., 2015 WL 2265671, at *5. The parties stipulated that Defendant received $823,000 in discounts for the Ford Vehicles Defendant purchased pursuant to the CPA Contract. Stip. Facts ¶ 18.

Defendant received this discount in exchange for its
adherence to certain restrictions, including a minimum
purchase requirement and a prohibition on exporting.
Since Defendant did not comply with the restrictions,
Defendant is not entitled to the discount.  Moreover,
the CPA Contract provides for the possibility of fleet
incentive chargebacks if the "In-Service Requirements"
are violated.  <u>See</u> CPA Contract, p. 4.  In this case,
the fleet incentive amounted to $823,000.  Because
Defendant failed to comply with the conditions of the
CPA Contract, Defendant is required to pay the full
price for the Ford Vehicles to put Plaintiff in the
same position had Defendant performed under the CPA
Contract as promised.

As to Plaintiff's breach of contract claim,
Plaintiff shows that there is no genuine dispute as to
any material fact, and Plaintiff is entitled to
judgment as a matter of law.  Accordingly, the Court
**GRANTS** Plaintiff's Motion as to its claim for breach of
contract.

**B.    <u>Undue Restraint of Trade Affirmative Defense</u>**

Section 1 of the Sherman Act prohibits "[e]very
contract, combination . . . or conspiracy, in restraint
of trade."  15 U.S.C. § 1.  Under antitrust law,
"[r]estraints imposed by agreement between competitors
have traditionally been denominated as horizontal
restraints, and those imposed by agreement between
firms at different levels of distribution as vertical

1  restraints." <u>Bus. Electronics Corp. v. Sharp</u>
2  <u>Electronics Corp.</u>, 485 U.S. 717, 730 (1988).  A
3  vertical nonprice restraint is judged under the "rule
4  of reason." <u>Id.</u> at 735-36.

5      The rule of reason "requires the antitrust
6  plaintiff to demonstrate that a particular contract or
7  combination is in fact unreasonable and
8  anticompetitive." <u>California v. Safeway, Inc.</u>, 651
9  F.3d 1118, 1133 (9th Cir. 2011) (quoting <u>Texaco Inc. v.</u>
10 <u>Dagher</u>, 547 U.S. 1, 5 (2006)) (internal quotation marks
11 omitted).  "Under this rule, the factfinder weighs all
12 of the circumstances of a case in deciding whether a
13 restrictive practice should be prohibited as imposing
14 an unreasonable restraint on competition." <u>Leegin</u>
15 <u>Creative Leather Prods., Inc. v. PSKS, Inc.</u>, 551 U.S.
16 877, 885 (2007) (quoting <u>Continental T.V., Inc. v. GTE</u>
17 <u>Sylvania Inc.</u>, 433 U.S. 36, 49 (1977)).  Factors to
18 take into account include (1) "specific information
19 about the relevant business," (2) "the restraint's
20 history, nature, and effect," and (3) "[w]hether the
21 businesses involved have market power." <u>Id.</u> at 885-86
22 (internal citations omitted).

23     Here, on Plaintiff's Motion for Summary Judgment,
24 Defendant bears the burden of proof on its affirmative
25 defense. <u>In re Oracle Corp.</u>, 627 F.3d at 387.  The
26 Court finds that Plaintiff has shown that there is no
27 evidence to support Defendant's affirmative defense
28

13

because the Joint Stipulated Facts[5] contain no evidence that the CPA Contract created a manufacturer-dealer like relationship between Plaintiff and Defendant or that the no-export clause is anticompetitive. <u>See</u> <u>id.</u>; <u>Safeway</u>, 651 F.3d at 1133. Moreover, Defendant has not met its burden of producing admissible evidence showing a triable issue of fact. <u>In re Oracle Corp.</u>, 627 F.3d at 387.

In its Opposition, Defendant makes two arguments. Defendant first argues that the CPA Contract cannot be construed as a prohibition on exporting the Vehicles. Def.'s Opp'n 9:9-12. This argument is misplaced. A plain reading of CPA Contract clearly states the vehicles must be operated in the United States, and therefore cannot be exported. The CPA Contract term requiring that "Vehicles must be registered and operated solely in the 50 United States" is the equivalent of a prohibition on the Vehicles' export outside the United States.

---

[5] The parties stipulated that "no facts other than the facts contained [in the Joint Stipulated Facts] may be submitted or referenced in support of or in opposition to any motion for summary judgment." Stip. Facts 2:3-5. The Stipulated Facts make no mention of Defendant's affirmative defense. Only paragraphs 15 and 23 are relevant to the affirmative defense. These paragraphs state, in relevant part: "Ford personnel told Mr. Catoire that, pursuant to the 'In-Service Requirements,' vehicles purchased pursuant to the CPA Contract had to be operated in the United States, and Mr. Catoire understood that this meant the vehicles could not be exported," and "Except for the export prohibition, [Defendant] agrees that the CPA Contract is a legally binding and valid contract." Stip. Facts ¶¶ 15, 23.

1    Defendant's second argument is that the no-export
2  clause cannot be reasonable because Defendant's
3  exporting the Vehicles does not compete with or injure
4  Plaintiff.  Def.'s Opp'n 9:18-21.  However, in order to
5  survive summary judgment, Defendant must present
6  admissible evidence showing a triable issue of fact
7  that the no-export clause has an anticompetitive
8  effect, not that Defendant's violation of the no-export
9  clause did not compete with Plaintiff.  It does not
10 follow that because Plaintiff did not sustain damages
11 due to Defendant's exporting the Vehicles, the no-
12 export clause has adverse anticompetitive effects, and
13 is therefore, an unreasonable restraint of trade.
14    Under the rule of reason, Plaintiff has shown that
15 there is no evidence that the CPA Contract created a
16 manufacturer-dealer or a broker-like relationship
17 between Plaintiff and Defendant.  The CPA Program
18 provides discounts or credits to high-volume purchasers
19 of Ford vehicles, in exchange for agreeing to the
20 restriction that the vehicles must be operated in the
21 United States and could not be exported.  Stip. Facts
22 ¶¶ 7-8, 14.  The Stipulated Facts provide no evidence
23 that the CPA Program intended to place the Vehicles for
24 resale into the stream of commerce.  Accordingly, there
25 is no evidence that the CPA Contract created a
26 manufacturer-dealer or a broker-like relationship
27 between Plaintiff and Defendant.
28    Second, even if such a relationship was shown, and

15

assuming the "In-Service Requirements" provision
constitutes a restraint, the restraint would be a
vertical restraint subject to the "rule of reason."
Bus. Electronics Corp., 485 U.S. at 735-36.   Under the
"rule of reason," Plaintiff has shown that there is no
evidence to support that the no-export provision
"should be prohibited as imposing an unreasonable
restraint on competition."   Leegin Creative Leather
Prods., Inc., 433 U.S. at 49.   The Stipulated Facts
make no mention of any relevant factors or
circumstances suggesting that the no-export clause has
any anticompetitive effect.   As Plaintiff notes,
Defendant has not (1) defined the relevant market, (2)
shown that Plaintiff has any market power in any
relevant market, or (3) shown how the "In-Service
Requirements" have or possibly could restrict output
and raise prices to consumers in the United States.
Pl.'s Mot. 7:15-18.

    Accordingly, the Court finds that (1) Plaintiff has
met its burden to prove that there is an absence of
evidence to support Defendant's affirmative defense,
and (2) Defendant has not met its burden to produce
admissible evidence showing a triable issue of fact.
For these reasons, Plaintiff's Motion [57] is **GRANTED**
and the affirmative defense **DISMISSED**.
///
///
///

1

**V. CONCLUSION**

2   Based on the foregoing, the Court **GRANTS**

3  Plaintiff's Motion for Summary Judgment [57] in its

4  entirety.  Judgment in favor of Plaintiff Ford Motor

5  Company and against Defendant Titan Enterprise Inc.

6  shall be entered accordingly.

7   **IT IS HEREBY ORDERED** that Plaintiff shall submit a

8  proposed judgment within ten (10) days of the date of

9  this Order.

10

11 **IT IS SO ORDERED.**

12

13 DATED: December 18, 2015      s/ RONALD S.W. LEW
                                 _____
14                               **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28